UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60130-CIV-DIMITROULEAS/SNOW

SUSAN O'LEARY, JODEANNE FARNHAM,
and MARTIN SOSNICK,

    Plaintiffs,

vs.

THE SEMINOLE TRIBE OF FLORIDA, and
UNITED COMMUNITY MANAGEMENT
CORP, HOLLYWOOD MOBILE ESTATES
LIMITED, LAUTREC MANAGEMENT
COMPANY AND HARTMAND AND TYNER,
INC.,

    Defendants.
_____/

**<u>ORDER GRANTING DEFENDANTS THE SEMINOLE TRIBE OF FLORIDA
AND UNITED COMMUNITY MANAGEMENT CORP'S MOTION TO DISMISS</u>**

THIS CAUSE is before the Court upon Defendants Seminole Tribe of Florida and United Community Management Corp.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [DE 7][1].  The Court has carefully considered the Motion, Plaintiffs Susan O'Leary, Jodeane Farnham and Martin Sosnick's Response to Motion to Dismiss [DE 17], Defendants' Reply [DE 18], and is otherwise fully advised in the premises.

**I. BACKGROUND**

---

[1] Defendants' Seminole Tribe of Florida and United Community Management Corp.'s Motions to Dismiss [DE's 5, 6 and 7] were filed three times in the record in this case, with the second and third filings including additional attached exhibits. <u>See</u> [DE's 5, 6 and 7].  On February 14, 2013, the Court entered an Order Denying as Moot Duplicative Motions to Dismiss [DE's 5 and 6], and instructing Plaintiffs to only respond once to Defendants' Seminole Tribe of Florida and United Community Management Corp.'s Motion to Dismiss [DE 7] .

On December 17, 2012, the three named Plaintiffs, Susan O'Leary, Jodeane Farnham and Martin Sosnick ("Plaintiffs") initiated this civil action against Defendants Seminole Tribe of Florida, United Community Management Corp., Hollywood Mobile Estates Limited, Lautrec Management Company, and Hartman and Tyner, Inc. in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE 12-034793.

This lawsuit, which seeks class action status, arises out of the Seminole Tribe of Florida ("the Tribe" or "Seminole Tribe")'s non-renewal of one year rental permits for approximately 700 mobile homeowners which expired on December 31, 2012. See [DE 1]. Plaintiffs are residents of a mobile home park known as Seminole Estates and/or Hollywood Mobile Home Estates, which is owned and operated by the Seminole Tribe of Florida on tribal trust land located on the Tribe's Hollywood Reservation.

By way of background, on March 11, 1969, the Seminole Tribe entered into a lease with Joseph Antonucci.[2] See [DE 1] at ¶ 40. The lease was approved by the U.S. Department of the Interior.[3] Defendant Hollywood Mobile Estates ("HME") operated the leased premises as a mobile home park since it acquired the lease in 1986.[4] See [DE 1] at ¶ 41. In June of 2008, the Tribe served HME with a letter in which the Tribe alleged breaches of the Master Lease and

---

[2] See also case no. 08-cv-61048-WPD at [DE 63], p. 2; case no. 09-cv-60016-WPD at [DE 15], ¶ 1.

[3] See case no. 08-cv-61048-WPD at [DE 63], p. 2; case no. 09-cv-60016-WPD at [DE 15], ¶ 1.

[4] See also case no. 08-cv-61048-WPD at [DE 63], p. 2; case no. 09-cv-60016-WPD at [DE 15], ¶ 1.

demanded cure.[5] See [DE 1] at ¶ 51.  On July 8, 2008, HME filed a complaint seeking to prevent the Tribe from reentering and retaking the premises. See Hollywood Mobile Estates v. Seminole Tribe of Florida, et al, case no. 08-cv-61048-WPD.  HME voluntarily dismissed its claims against the Tribe on August 20, 2008. See case no. 08-cv-61048-WPD at [DE's 30-34].[6]  On July 15, 2008, the Seminole Tribe, utilizing its police department, entered and took control of the property and ejected HME from its leasehold.[7] See [DE 1] at ¶ 52.  On January 6, 2009, HME filed a lawsuit seeking injunctive relief against the five Tribal council members to compel the Defendants to return both the property and the collected rents. See Hollywood Mobile Estates Ltd. v. Cypress, et al., case no. 09-cv-60016-WPD.  The Court, analyzing the applicability of the doctrine of Ex Parte Young[8], dismissed the action on sovereign immunity grounds.  The Eleventh Circuit affirmed in part and reversed in part, holding that tribal sovereign immunity did not bar HME's request for an injunction restoring it to the premises. See infra (discussion of Eleventh Circuit's ruling in Hollywood Mobile Estates Ltd. v. Cypress, 415 Fed. Appx 207 (11th Cir. 2011)).  The litigation of the remaining issue proceeded in the district court, resulting in a Confidential Mediation Settlement Agreement between the parties, dated February 15, 2012.  See

---

[5] See also case no. 08-cv-61048-WPD at [DE 63], p. 2.

[6] HME attempted to maintain claims against Defendants U.S. Department of the Interior and Secretary Dick Kempthorne.  However, the Court dismissed those claims with prejudice. See also case no. 08-cv-61048-WPD at [DE 63]. The parties cross-appealed the Court's decision to the United States Court of Appeals for the Eleventh Circuit [case no. 09-15336-DD]. The Eleventh Circuit's Mandate [DE 79] issued on July 19, 2011. In its Opinion, the Eleventh Circuit vacated in part this Court's judgment and remanded the case with instructions to dismiss for lack of subject matter jurisdiction.

[7] See case no. 09-cv-60016-WPD at [DE 15] at ¶ 2.

[8] 209 U.S. 123, 151 (1908)

case no. 09-cv-60016-WPD [DE 96]. In 2012, following the settlement of the litigation between HME and tribal officials, the Secretary of the Interior approved in writing the termination of the Master Lease Agreement (aka Business Lease No. 48) between the Tribe and HME. See case no. 13-60130 [DE 26]. The Tribe determined that it would not renew any of the residents' one year Rental Permits/Agreements upon their expiration on December 31, 2012, and that the mobile home park would permanently close at the end of the business day on June 30, 2013. See case no. 13-60130 at [DE 1], ¶ 1; see also [DE 1] at Exh. "D." Defendants sent individual homeowners a letter, dated September 14, 2012, informing them that they would not be renewing the Rental Permits after December 31, 2012, stating that they were closing the common areas, offering decreased rent for that time period until December 31, 2012, stating that as of June 30, 2013, the mobile home park would be permanently closed, and offering to help those needing assistance with moving expenses. See case no. 13-60130 at [DE 1] ¶¶ 10-11, Exh. "D."

Despite the fact that Plaintiffs' Rental Agreements expired on December 31, 2012 and have not been renewed, Plaintiffs claim an ongoing right under the now expired one year Rental Agreements to long term possession, use and occupancy of the Tribal land through the year 2024. Plaintiffs allege in the complaint to have "separate, but identical or nearly identical," Rental Agreements[9] for lease of mobile home sites on the property necessary to house their respective mobile homes. (Complaint at ¶ 25 and Exhibit "A").

Plaintiffs' Complaint alleges the following seven counts: Count I: Breach of Contract/ Breach of Lease against United Community Management Corp. ("United") and the Tribe for

---

[9]A sample copy of the Rental Agreement through which the Plaintiffs claim an ongoing, long-term right to possession of the subject tribal trust land through the year 2024 is attached to and made a part of the Complaint as Exhibit "A."

attempting to terminate the Rental Agreements through non-renewal and for locking Plaintiffs out of certain common area amenities: Count II: Breach of Contract/Breach of Lease (i.e., Rental Agreements with Plaintiffs) against Hollywood Mobile Estates Limited ("HME"), Lautrec Management Company ("Lautrec") and Hartman and Tyner Inc. ("Hartman and Tyner") for allowing the Tribe to buy out the Master Lease when it knew that the Tribe would not renew Rental Agreements with Plaintiffs; Count III: declaratory relief claim against all Defendants for violating the Florida Deceptive and Unfair Trade Practices Act, Chapter 501.201 et seq. ("FDUTPA"); Count IV: damages claim against all Defendants for violations of FDUTPA; Count V: injunctive relief claim against the Tribe and United for an injunction permitting Plaintiffs and other residents to reside on the tribal trust land used as a mobile home park through the year 2024 and compelling reopening of the amenities under the expired one-year Rental Agreements; Count VI: claim against the Tribe and United for violations of the Florida Mobile Home Act, Chapter 723, Florida Statutes; and Count VII: intentional infliction of emotional distress claim against all Defendants. See [DE 1-1]

Defendants Seminole Tribe and United removed the action to federal court on January 18, 2013. See [DE 1]. As grounds for removal, Defendants argued that the position taken by Plaintiffs that they have an ongoing long-term right to possession of tribal trust land until the year 2024 implicates and requires compliance with applicable federal statutes governing encumbrances of restricted Indian land for seven (7) or more years and the long term leasing of restricted Indian land, which are contained in 25 U.S.C. §§ 81(b) and 415(a), respectively. See [DE 1] at p. 2.

Defendants Lautrec, HME and Hartman & Tyner filed an Answer and Affirmative Defenses to Plaintiffs' Complaint. See [DE 4]. Defendants Seminole Tribe and United filed the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that the Court lacks subject matter jurisdiction, and that Plaintiffs fail to state a claim upon which relief can be granted. See [DE 5]. On June 8, 2013, Plaintiffs filed a Motion for Preliminary Injunction [DE 24], seeking that the Court order the Tribe and United to immediately reopen and maintain all common areas that were closed on or around September 14, 2012. Plaintiffs withdrew the motion on June 19, 2013, the day before the scheduled hearing. [DE 27].

## II.  DISCUSSION

*The Jurisdictional Bar of Tribal Sovereign Immunity*

As a general rule, Indian tribes, such as the Seminoles (its employees and agents), are immune from suit. See Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751 (1998). Additionally, as a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. Id. (citing Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, 476 U.S. 877, 890 (1986)); see also Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 512 (1940). Furthermore, sovereign immunity cannot be implicitly waived; it must be unequivocally expressed. A.K. Management Co. v. San Manuel Band of Mission Indians, 789 F.2d 785, 789 (9th Cir. 1986); Santa Clara Pueblo, 309 U.S. at 58.

Plaintiffs' claims against the Tribe and United in Count I and III-VII are barred by tribal sovereign immunity. There is nothing in the Complaint to suggest that the Tribe, acting through its Tribal Council while assembled in legal session, duly enacted a resolution through which it

waived its tribal sovereign immunity from suit, either as to itself or United, or an abrogation thereof by Congress, with respect to the claims set forth in the Complaint.  Additionally, Plaintiffs have failed to allege facts which suggest a waiver of tribal sovereign immunity under the exclusive procedure contained in Ordinance C-01-95. See [DE 6-2] (Tribal Sovereign Immunity Ordinance of the Seminole Tribe of Florida, C-01-95); see Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1287 (11th Cir. 2001).

Plaintiffs take the position that the Eleventh Circuit's ruling in Hollywood Mobile Estates Ltd. v. Cypress, 415 Fed. Appx 207 (11th Cir. 2011) ("HME v. Cypress"), should preclude the Tribe from asserting that Plaintiffs' claims fail due to the doctrine of sovereign immunity. However, for the following reasons, the Court finds that Plaintiffs' reliance on HME v. Cypress is unfounded in the context of the facts and causes of action alleged.  First and foremost, the Eleventh Circuit in HME v. Cypress, explicitly held that "the Young doctrine[10] allows suits against [tribal] officers 'seeking prospective equitable relief to end continuing violations of federal law.'" 415 Fed. Appx. 207, 208.  The Eleventh Circuit ruled that HME's request for an injunction directing the tribal defendants to restore it to the property constituted prospective relief that would cure the alleged ongoing violation of federal law.[11] Id. at 209.  HME v. Cypress was

---

[10] The Eleventh Circuit explained that "when tribal officials act beyond their authority, however, they are subject to suit under the doctrine of Ex parte Young." 415 Fed. Appx. at 208. The Ex Parte Young doctrine was extended as a means to circumvent tribal sovereign immunity where a violation of the Constitution, laws or treaties of the United States is alleged to have occurred with respect to a tribal government. Idaho v. Coeur d'Alene Tribe, 521 U.S. 261 (1997). Actions for damages are not permitted under the doctrine of Ex parte Young. HME, 415 Fed. Appx. at 209.

[11] The single count in HME v. Cypress alleged violation of federal law as the basis for the claim.  See case no. 09-60016 at [DE 1], ¶¶ 22-23.

about the application of tribal immunity of individual tribal officials who were violating federal law.  Here, the Defendants raising the defense of sovereign immunity are the Tribe and its agent United, not individual tribal officials.  Moreover, Plaintiffs' claims against the Tribe and United in the instant case all arise under state law; Plaintiffs do not allege ongoing violations of federal law.[12]  Thus, any exceptions to tribal sovereign immunity that were presented in HME v. Cypress are not applicable in the instant case.

Moreover, as to the claims against Defendants in Count I, the legal position taken by Plaintiffs implicate and require compliance with applicable federal statutes governing the long term leasing of restricted Indian land and encumbrances of restricted Indian land for seven (7) or more years and, which are exclusively addressed and contained in 25 U.S.C. §§ 415(a) and 81(b), respectively.

Title 25 U.S.C. § 415(a) requires that leases of Native American lands be approved by the Secretary of the Department of Interior.  25 U.S.C. § 415(a).  The purpose of § 415(a) is for the protection of Native American interests.  Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 29 (1st Cir. 2007); Utah v. United States Dep't of Interior, 45 F. Supp. 2d 1279, 1283 (D.

---

[12] Count I alleges breach of contract under Florida Statutes.
Count III alleges a claim for declaratory relief under Florida Deceptive and Unfair Trade Practices Act (FDUTPA). FLA. STAT. § 501.201.
Count IV alleges violations of the Florida Deceptive and Unfair Trade Practices Act (FDUPTA) FLA. STAT. § 501.201.
Count V alleges a claim for injunctive relief under Florida law, Chapter 723.
[DE 1-1].
Count VI alleges violations of the Florida Mobile Home Act, Chapter 723, Florida Statutes.
Count VII alleges a claim under Florida law for intentional infliction of emotional distress.

Utah 1999); Saguaro Chevrolet, Inc. v. United States, 77 Fed. Cl. 572, 577-78 (Fed. Cl. 2007) ("[T]he United States' approval of a lease involving Indian land is consistent with the long-standing relationship between Indians and the government in which the government acts as a fiduciary with respect to Indian property."). Even if the United States acts as a trustee in approving leases of Native American tribes, its obligation is to the tribes for their benefit and not to the parties with whom the tribes contract. Sangre De Cristo Dev. Co. v. United States, 932 F.2d 891, 895 (10th Cir. 1991).

Further, Title 25 U.S.C. § 81(b) provides that:

> No agreement or contract with an Indian tribe that encumbers Indian lands for a period of 7 or more years shall be valid unless that agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary.

25 U.S.C. § 81(b). § 81(b) "dictates that any agreement within its purview that is not approved by the Secretary of the Interior ("the Secretary") is void *ab initio*." Penobscot Indian Nation v. Key Bank of Maine, 112 F.3d 538, 545 (1st Cir. 1997).

Here, Plaintiffs wish to convert a one year lease with a permissive renewal provision into a long term lease of tribal trust land through the year 2024. Plaintiffs' claims, if true, would encumber the restricted tribal trust land for seven (7) or more years, thereby requiring compliance with the provisions of 25 U.S.C. § 81(b) which exclusively governs such encumbrances. It would also convert the one year, renewable Rental Agreements into mandatory self-renewing long term leases requiring written Secretarial approval under 25 U.S.C. § 415 (a). However, no allegations in the Complaint or the exhibits thereto evidences compliance with the requirements of either federal statute pertaining to tribal trust lands. Accordingly, as a matter of law, Plaintiffs' claimed entitlement to possession of restricted Indian lands through the year 2024

9

lacks secretarial approval is null and void *ab initio*.  Plaintiffs' claims under Count I shall be dismissed on these grounds, in addition to being jurisdictionally infirm under the doctrine of tribal sovereign immunity.  See Contour Spa at the Hard Rock, Inc v. Seminole Tribe of Florida, (S.D. Fla. March 31, 2011), case no. 10-Civ-60483, *aff'd* 692 F. 3d 1200 (11th Cir. 2012), *cert. denied* ____U.S._____(2013) (granting motion to dismiss under Rule (12)(b)(1) for lack of subject matter jurisdiction on grounds that "the lease agreement [was] null and void ab initio for lack of secretarial approval, and therefore Defendant Seminole Tribe retains its sovereign immunity from suit"); Everglades Ecolodge at Big Cypress, LLC v. Seminole Tribe of Florida, 836 F. Supp. 2d 1296 (S.D. Fla. 2011) (dismissing action under Rule 12(b)(1) and 12(b)(6) on grounds that lease was void ab initio for lack of secretarial approval, thus the Tribe did not waive its sovereign immunity, and for that same reason the complaint failed to state a cause of action for breach of contract or specific performance).

*Plaintiffs' Breach of Contract Claim Nonetheless Fails on the Merits*

Even if the Court were to analyze Plaintiffs' breach of contract claims against the Tribe and United on the merits, the claims nonetheless fail.  Principles of general contract law and equitable doctrines such as estoppel do not apply to Indian/non–Indian contract disputes where the contract is void due to lack of Secretarial approval.  A.K. Mgmt. Co. v. San Manuel Band of Mission Indians, 789 F.2d 785, 789 (9th Cir. 1986) ("It is doubtful that general contract principles apply to an agreement subject to 25 U.S.C. § 81. Section 81 explicitly provides that a contract is 'null and void' without written approval from the BIA."); Everglades Ecolodge, LLC v. Seminole Tribe of Florida, 836 F. Supp. 2d 1296, 1307 (S.D. Fla. 2011); see also U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc., 883 F.2d

886, 890 (10th Cir.1989) (claims of equitable estoppel have been considered by the courts when evaluating contracts with tribes and have been rejected).

The Plaintiffs' individual leases expired on December 31, 2012. Paragraph Two of the Rental Agreement provides:

> The term of this Rental Agreement shall be for a period of 12 months commencing on the 1st day of January, 2012, and expiring on the last day of December, 2012. Thereafter the rental term may be extended for annual twelve month terms subject to such changes in lot rental amount and terms and conditions of the Rental Agreement as permissible under Florida law. In the event the HOME OWNER[13] continues to reside on the homesite into a new term, the increased lot rental amount and any other changed term or condition of the Rental Agreement properly noticed pursuant to section 723.037(1), Florida Statutes, shall automatically become a term or condition of the tenancy then created. COMMUNITY OWNER[14] may increase lot rental amount on a date other than the annual expiration date of the initial rental agreement providing any increase in lot rental amount resulting therefrom, shall occur no more frequently than annually.

[DE 1-1] at p. 37. On September 14, 2012, United, as an agent of the Tribe, sent letters to the individual homeowners stating that the leases would not be renewed after December 31, 2012. [DE 1-1] at p. 45. This same letter also informed the individual homeowners that the park would officially be closed as of June 30, 2013, approximately nine months after the letters issued. [DE 1-1] at p. 45. It further offered to help those needing assistance to help with moving expenses. [DE 1-1] at p. 46. The September 14, 2012 letter sent to the individual homeowners also informed them that the common areas would be closed. [DE 1-1] at p. 45.

---

[13] In the Rental Agreement, Exhibit "A", "HOME OWNER" is defined as Adriana La Fontaine.

[14] COMMUNITY OWNER is defined in the Rental Agreement as HOLLYWOOD ESTATES.

As the individual Rental Agreements had a termination date of December 31, 2012, it is uncertain where the implication of 2024 arises.  Moreover, even if the Plaintiffs did have a right under the individual Rental Agreements to reside at the mobile home park until 2024, then the individual Rental Agreements  would require signatures from the Secretary of the Interior in accordance with federal statute.  It is undisputed that the individual leases do not contain signatures from the Secretary of the Interior; therefore, such an interpretation which would render the individual Rental Agreements null and void.  On the other hand, if the Plaintiffs's Rental Agreements are a yearly renewal, then the Defendants exercised the right to not renew the leases well in advance of the end of the 2012 lease, by approximately 3.5 months. The non-renewal of Plaintiffs' individual expired leases does not give rise to a breach of contract claim, even if such a claim was not already barred by tribal immunity, 25 U.S.C. §§ 415(a) and 81(b).[15]

### III.  CONCLUSION

Based upon the foregoing, it is **ORDERED and ADJUDGED** as follows:

---

[15] Finally, Plaintiffs' assignment argument fails.  The doctrine of assignment is "a transfer of all interests and rights to the thing assigned. Following an assignment, the assignee 'stands in the shoes of the assignor' and the 'assignor retains no rights to enforce the contract at all." Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC, 650 F. Supp. 2d 1213, 1227 (S.D. Fla. 2009) (citing Leesburg Cmty. Cancer Ctr. V. Leesburg Reg'l Med. Ctr., Inc., 972 So. 2d 203, 206 (Fla. 5th DCA 2007)).  Plaintiff argues that as the Tribe and United stands in the shoes of Defendant HME, so that the 1969 Master Lease between the Tribe and HME may be enforced against the Tribe.  First, the general contract law principle of assignment does not apply to the instant contract dispute. See A.K. Mgmt. Co. v. San Manuel Band of Mission Indians, 789 F.2d 785, 789.  Second, that application in the present case is incongruous, as it would render the Master Lease to between the Tribe and itself.  Moreover, the Master Lease was terminated with written approval by the Secretary of the Interior; there is no authority for the concept of stepping into the shoes for an assignment of a terminated contract.

1. Defendants Seminole Tribe of Florida and United Community Management Corp.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [DE 7] is hereby **GRANTED**;

2. This action is hereby **DISMISSED** as to Defendants Seminole Tribe of Florida and United Community Management Corp.;

3. The action remains pending as to the remaining Defendants;

4. The remaining parties shall file their joint scheduling report on or before August 1, 2013.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11th day of July, 2013.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record